UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK COBBIN, | ) | Case No.  1:05 CV 2809 |
| | ) | |
| Petitioner, | ) | Judge Dan A. Polster |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| STUART HUDSON, WARDEN, [1] | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Frederick Cobbin [2] is a prisoner in state custody following his conviction on charges of voluntary manslaughter, aggravated burglary, aggravated robbery and kidnapping.[3]  Thereafter Cobbin was granted leave to file delayed appeal and his seven assignments of error were resolved in favor of the state.  See *State v. Cobbins*, 2004 WL 1576408, 2004 - Ohio - 3736 (Ohio App. 8th Dist.), appeal not allowed, 104 Ohio St.3d 1426, 819 N.E.2d 709, 2004 - Ohio - 6585 (Table 2004).  Cobbin is now in federal court on application for habeas corpus relief under 28 U.S.C. §2254.  The undersigned finds that Cobbin has exhausted his state remedies with respect to the four grounds raised for federal collateral review.

> **GROUND ONE:** PETITIONER WAS DEPRIVED OF HIS RIGHTS TO A FAIR TRIAL AS GUARANTEED HIM BY THE U.S. CONSTITUTION WHEN THE COURT FAILED TO

---

[1] Cobbin named Margaret Bradshaw as respondent in his petition but Stuart Hudson is substituted as the proper respondent pursuant to Fed. R. Civ. P. 25 since he is the warden at the Mansfield Correctional Institution where Cobbin is incarcerated.

[2] Petitioner has identified himself as Frederick Cobbin but in state court he was named as defendant as Frederick Cobbins.  There is no certainty which is the correct spelling of the last name.

[3] For reasons not explained, respondent delves into another of Cobbin's criminal convictions including a plea bargain to attempted robbery.  (Return p. 2).  This conviction in case CR412947 is not a matter raised by Cobbin.  He challenges his convictions in Case No. CR 411699.

1:05 CV 2809                                    2

> INSTRUCT THE JURY ON THE CREDIBILITY OF THE STATES
> WITNESS.
>
> **Supporting FACTS:** During voir dire, the trial court asked jurors if they
> could listen to the testimony of police officer and use the same credibility test
> used for any other witness. This question was followed by a question that
> asked "if the same held true with jailhouse snitches; would you test the
> persons credibility the same as other witnesses?" Defense counsel objected
> and asked for a curative instruction, but the trial court refused.

The state appellate court found no abuse of discretion when the trial court asked a

witness during *voir dire*:

> **THE COURT: Would you be able to listen to the testimony of a police
> officer or peace officer and use the same tests of credibility as any
> other witness?**
>
> **JUROR NO. 15: Yes.**
>
> **THE COURT: *Does the same hold true with jailhouse snitches*, would
> you test that person's credibility the same as other witnesses?**
>
> (Bold face in original, italics supplied).

*Cobbins*, 2004 WL 1576408 ¶32.

Cobbin argued that this inquiry "implied that such testimony should be viewed by the

jury with other than suspicion and viewed other than with great caution" (*Id.* ¶33), or as he

argued to the Ohio Supreme Court, the trial court informed the jurors that a jailhouse snitch's

credibility should be evaluated just as a police officer's credibility.  (Memo. in Support of

Jurisdiction p. 5, ECF #11-11).  The state appellate court disagreed, finding that the trial court's

*voir dire* question implied only that the witness was to test credibility of all witnesses both police

1:05 CV 2809                                3

and snitches, and asking whether a juror can test credibility is a fair question no matter who the

witness was.  (*Id.* ¶34).

 

      Respondent incorrectly argues that this first ground is not cognizable in habeas corpus.

Constitutionally under the Sixth and Fourteenth Amendments the state is obligated to empanel

an impartial jury.  See *Ristaino v. Ross*, 424 U.S. 589, 595, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258

(1976); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Irvin v.

Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).  The state trial judge

retains great latitude in deciding what questions should be asked on *voir dire*.  *Mu'Min v.

Virginia*, 500 U.S. 415, 424, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991).  "Hence [s]o long as the

court insured that defendant or defendants had a fair trial by a panel of impartial, indifferent

jurors, reversal is not mandated."  (internal quotation marks omitted).  *Byrd v. Collins*, 209 F.3d

486, 531 (6th Cir. 2000), *cert. denied*, 531 U.S. 1032 (2001), quoting *U.S. v. Phibbs*, 999 F.2d

1053, 1071 (6th Cir. 1993), quoting *Irvin v. Dowd*, 366 U.S. at 722.  There is nothing

constitutionally impermissible when the context of the questions and comments was to ascertain

whether or not the prospective juror could set aside his or her emotions and decide the case

impartially.  *Byrd*, 209 F.3d at 531.  As the state appellate court perceived, there was nothing

prejudicial in asking jurors test the credibility of all witnesses in the same fashion.  Cobbin

strains the question put to the juror to imply that snitches and police were to be regarded as

equally credible.  That simply is inaccurate.  The juror was asked to "test that person's

credibility the same as other witnesses."

1:05 CV 2809                                    4

    For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2), which  extends the  permissible range of federal review of state convictions follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (emphasis supplied).

    A district court has very restricted Congressionally granted powers for review under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*; Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002). The habeas applicant must show either that the state decision was "contrary  to" or an "unreasonable application" of Supreme Court precedent.  The phrases "contrary to" and "unreasonable application" are not the same.   Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).  Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ.  *Id.*   The phrase "clearly established Federal law" refers to holdings,

1:05 CV 2809                                        5

as opposed to *dicta,* of the U.S. Supreme Court at the time of the relevant state court decision. *Lockyer*, 538 U.S. at 71-72, 123 S.Ct. at 1172; *Williams v. Taylor*, 529 U.S. at 412; *Bell v. Cone*, 535 U.S. at 698.


     Under the "unreasonable application" standard, "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).  This includes both the state court's refusal to extend and its unreasonable extension of existing legal principles from Supreme Court precedent to new contexts.  See *Williams*, 529 U.S. at 407.  The unreasonable application of Supreme Court precedent must, however,  be "objectively" unreasonable.  *Id.,* 529 U.S. at 409, 120 S.Ct. at 1521; *Wiggins, supra*, at 520-21.  When the state court has rendered a decision, the federal reviewing court  may not grant the writ in its "independent review of the legal question." *Lockyer v. Andrade*, 538 U.S. at 75.  When there has been an "unreasonable application" of

1:05 CV 2809                                          6

clearly established federal law then no deference is due to the state decision and the federal court

is free to resolve the claim independently. [4]


    Cobbin, though, does not argue that the state court decision was contrary to or an

unreasonable application of clearly established law. Rather, he simply repeats several of his

arguments raised to the state appellate court in anticipation of a different outcome. Federal

habeas corpus, however,  is "an extraordinary remedy and 'will not be allowed to do service for

an appeal.'" *Bousley v. U.S.*, 523 U.S. 614, 621, 118 S.Ct.1604, 140 L.Ed.2d 828 (1998), quoting

*Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994).


    The state decision did not expressly rest on a decision from the United States Supreme

Court nor any other court.   However, in the application of 28 U.S.C. §2254(d), the Supreme

Court explained that the application for habeas corpus will be denied when a state decision cites

no Supreme Court case law and when the state decision shows no awareness of Supreme Court

case law, "so long as neither the reasoning nor result of the state-court decision contradicts

them" [referring to Supreme Court cases].  *Early v. Packer* 537 U.S. 3, 7-8, 123 S.Ct. 362, 154

---

    [4] "Under AEDPA, a federal court may grant habeas relief, as relevant, only if the state court's "adjudication of [a] claim on the merits ... resulted in a decision that ... involved an unreasonable application" of the relevant law. When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires. See *Wiggins v. Smith,* 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (performing the analysis required under *Strickland's* second prong without deferring to the state court's decision because the state court's resolution of *Strickland's* first prong involved an unreasonable application of law); *id.*, at 527-529, 123 S.Ct. 2527 (confirming that the state court's ultimate decision to reject the prisoner's ineffective-assistance-of-counsel claim was based on the first prong and not the second). See also *Williams, supra,* at 395-397, 120 S.Ct. 1495; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam)* (indicating that § 2254 does not preclude relief if either "the reasoning [or] the result of the state-court decision contradicts [our cases]")."

*Panetti v. Quarterman,* -U.S. -, 127 S.Ct. 2842, 2858 -2859 (2007)

1:05 CV 2809                                   7

L.Ed.2d 263 (2002) (*per curiam*).  Accordingly a state decision is not "contrary to . . . clearly

established federal law" for failure to cite Supreme Court decisions. *Mitchell v. Esparanza*, 540

U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).  Further Cobbin fails to raise any argument

relevant to 28 U.S.C. §2254(d).  Cobbin fails to establish that the state decision was "contrary

to" or an unreasonable application of clearly established federal law.


> **GROUND TWO:** PETITIONER WAS DEPRIVED OF HIS 6[TH]
> AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF
> COUNSEL, WHEN COUNSEL FAILED TO REQUEST AN
> INSTRUCTION CONCERNING THE KEY WITNESS ON
> WHICH PETITIONERS DEFENSE RESTED.
>
> **Supporting FACTS:** Trial counsel based his defense on the
> credibility of the states key witness. Yet he failed to request
> credibility instructions for this witness who not only had a prior
> conviction, but had reasons and motive to mislead the jury during
> his testimony. This was the centerpiece of petitioners defense and
> counsels failure to request these instructions prejudiced petitioner
> and deprived him of his right to the effective assistance of counsel
> as guaranteed him under the 6[th] Amendment of the U.S.
> Constitution.


To sustain this Sixth Amendment claim Cobbin "must show that the deficient

performance prejudiced the defense;" so that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Williams

v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)

Cobbin had argued that the attorney should have requested the instruction from Ohio Jury

Instruction 402.61 in addition to the credibility instruction provided by the trial court at the

1:05 CV 2809                                   8

conclusion and during *voir dire*. [5]   As the state court reasoned, the only purpose for this

instruction would be to require the jury to consider credibility "more carefully" as Cobbin had

argued.  *Cobbin*s at ¶47.  The court explained that the instruction proposed was designed to

separate inferences as to credibility from other inferences such as guilt.  Since only credibility

was at issue the instruction was unnecessary.  *Cobbins* at ¶48.


        In resolving this claim the state court decision acknowledged the two-prong standard set

forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Cobbins* at ¶41.  The state court did not make an express finding with respect to whether or not

counsel's performance was deficient but leaped directly into the question of whether or not this

failure to request the instruction was prejudicial.  *Cobbins*, at ¶¶42-54.  The state court decision

rested on the finding that: the jurors were amply and correctly instructed on witness credibility;

they had the opportunity to hear any inconsistencies in witness testimony and observe each

witnesses' demeanor while testifying on direct and cross-examination; and finally that Cobbin

did not explain how he had been prejudiced by counsel's failure to request the specific

instructions he subsequently suggested.  The court concluded that ultimately there was no

_____

        [5] In addition to [the court's] instructions, defendant maintains that his attorney should have
requested the following instruction:

> **Evidence was received that a witness or witnesses were convicted of
> (*describe prior conviction). If you find that a witness or witnesses were
> convicted of (*describe prior conviction*), you may consider that evidence
> only for the purpose of testing the witnesses' (credibility)(believability)
> and the weight to be given the witnesses' testimony.**  (bolding in original).

*Cobbins* at ¶46.

1:05 CV 2809                                        9

reasonable probability that the defendant's proposed instruction would have changed the

outcome of the trial. *Cobbins* at ¶54.


        The state court applied the correct federal standard of review for effective assistance of

counsel under the Sixth Amendment.  Consequently it is not enough to convince a federal habeas

court that in its independent judgment the state court decision was incorrect.  Rather, Cobbin

must show that the state decision applied *Strickland* to the facts of the case in an objectively

unreasonable manner.  See *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914

(2002); *Williams v. Taylor*, 529 U.S. 362, 409, 410, 120 S.Ct. 1495, 1521-22, 146 L.Ed.2d. 389

(2000). This Cobbin cannot do.   The state decision was not objectively unreasonable and

Cobbin fails to sustain his claim under 28 U.S.C. §2254(d).


> **GROUND THREE:** PETITIONER'S DUE PROCESS RIGHTS WERE
> VIOLATED WHEN THE STATE FAILED TO MEET IS BURDEN OF
> PROVING PETITIONER'S GUILT BEYOND A REASONABLE
> DOUBT AS GUARANTEED BY THE U.S. CONSTITUTION.
>
> **Supporting FACTS:** The State Appellate Court decision affirming
> petitioner's claim of insufficient evidence was premised on a "Probable
> Cause" standard rather then the standard dictated by the United States
> Constitution which mandates "Beyond a Reasonable Doubt" standard.
> Under the State court standard the State need only show a "Probable
> Cause" or likely standard to gain a conviction.


        The state appellate court resolved simultaneously Cobbin's claim that the evidence was

insufficient to support conviction with that of his claim that the conviction was against the

manifest weight of the evidence.  *Cobbins*, 2004 WL 1576408 at ¶¶8-29.  The state decision's

reasoning applied *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997 - Ohio - 52

1:05 CV 2809                                    10

(1997), in which the Ohio Supreme Court borrowed upon federal precedent in setting out the

proper analysis of a sufficiency of the evidence claim.  See *Thompkins*, 78 Ohio St.3d at 386-87

citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).


The state appellate court scrutinized the elements of each of the underlying criminal

statutes for voluntary manslaughter, aggravated burglary, aggravated robbery and kidnapping

and found the evidence was sufficient to sustain these convictions based on its factual findings.

These evidentiary findings are presumed correct and Cobbin has not presented "clear and

convincing" evidence to rebut them.  See 28 U.S.C. §2254(e)(1); *Joshua v DeWitt*, 341 F.3d 430,

436 (6th Cir. 2003).


> {¶ 2} The state's witnesses presented the following account. At 4:30 a.m.
> on April 17, 2001, Cleveland police officers responded to a call at the
> residence located at 1723 Burgess Avenue. Once inside the home, the
> officers discovered the body of Lori Crawford. She was lying in a pool of
> blood with her legs bound by an appliance cord. An autopsy established
> that Crawford had suffered 22 blunt impact blows to her head, 11 stab
> wounds, and strangulation. Crawford's death was ruled a homicide by the
> Cuyahoga County Coroner's Office.
>
> {¶ 3} The day before she was murdered, Crawford, defendant, and a man
> named Dennis Johnson were at Gayle Solomon's crack house. In exchange
> for drugs, Crawford and defendant were selling items taken from the
> house where Crawford was living.FN2 Defendant told Johnson and Sims
> that he wanted to have someone go to Crawford's to take other items so
> he could sell them for drugs. That night, defendant was getting high at a
> friend's house when he met Larry Porter.
>
>
> FN2. The house was owned by Crawford's former boyfriend,
> Pearman Jones. He allowed her to stay in the house and use his car
> even though they were no longer dating. While living in Pearman's
> house, Crawford was dating defendant.

1:05 CV 2809                              11

{¶ 4} Porter was already high and about to leave when defendant asked him for a ride to his girlfriend's. Defendant told him he needed a ride because he and his girlfriend had broken up and he wanted to get some things he had left at her house. Porter agreed to give defendant a ride.

{¶ 5} Through the course of that night and the early morning hours of the next day, the two men made four stops. At their first stop, the two men got high. The second stop was at Crawford's where they arrived approximately between 9:00 p.m. and 10:00 p.m. Porter sat in the car and waited "[s]omewhere around 15 minutes" before defendant returned. The two men left to get cigarettes. Porter drove defendant to a local supermarket. When defendant returned to the car, he showed Porter the packs of cigarettes he had stolen. The two men then drove to another location where defendant sold the stolen cigarettes for crack cocaine.

{¶ 6} They returned to Crawford's and defendant went inside. While Porter waited in the car, defendant removed a "DVD player or CD and a telephone" from the house. Porter also helped defendant remove a television from the landing leading to the second floor of the house. Porter noticed defendant was "edgy" when he returned to the car. Porter drove defendant to Gayle Solomon's, where defendant sold the items taken from Crawford's for "drugs and money ." Porter estimated the time to be around 5:00 a.m. One of Crawford's friends discovered her body around 3:15 a.m.

{¶ 7} Following a police investigation, defendant was arrested. He pled not guilty to Crawford's murder and other related offenses. After the state rested its case, defendant made a Crim.R. 29 motion for acquittal, which the trial court denied. Defendant did not present any defense witnesses.

. . .

{¶ 17} . . . The state's witnesses provided substantial evidence of Crawford's murder, along with details that incriminate defendant, including defendant's admission of the murder.

{¶ 18} Johnson's testimony about the events at Gayle Solomon's house the day before Crawford was murdered is unrebutted and directly contradicts defendant's statement to police that he last saw Crawford on April 13th, four days before she was killed. Johnson said he was at Gayle Solomon's crack house and heard defendant making a deal to sell Sims items from Crawford's house in exchange for drugs. Johnson heard defendant saying

he wanted someone to go to Crawford's to "get the stuff, TV's and stuff out." Johnson stated that Sims "said he was going to buy it."

*4 {¶ 19} Not only did Johnson's testimony lay the foundation for defendant's theft motive, it also established a time-line of events for the jury to assess. Johnson's testimony is consistent with other witnesses and the events they described in the hours leading to Crawford's murder.

{¶ 20} Porter, a convicted felon, testified not only that for about 12 hours or so he drove defendant to various places, as well as to and from Crawford's, but also that defendant took the items from Crawford's and then dropped them off at Gayle Solomon's. Porter testified that defendant made four calls to Porter's cell phone the night Crawford was killed. Detective Garisek testified the police traced those calls and they were made from Crawford's house.

{¶ 21} Gayle Solomon's testimony confirms the time frame described by both Johnson and Porter regarding the hours before and after Crawford's death. She also confirms that defendant and Porter delivered a TV, DVD, and other items to her house in the early morning hours of April 17, 2001.

{¶ 22} Collins and Lips confirm the sequence of events described by Porter. On the 16th, Lips and Collins were with Crawford in her home. When both men left, Crawford was still alive. Lips returned to the house later and then left again at 9:30 p.m. When Collins returned to Crawford's and found the downstairs door was open, he went to get Lips. Both men returned to Crawford's, where they discovered her body, and called police around 4:30 a.m.

{¶ 23} Police Officer Hawkins' testimony supports Collins' recollection of the events and time frame on the 16th. Hawkins testified he and his partner were dispatched to Crawford's address about "4:16 a.m." Hawkins described how bloody the apartment was when they found Crawford's body. This testimony is consistent with what defendant told Reginald Ballard, namely that he was upset because blood had spattered on an expensive pair of shoes he was wearing.

{¶ 24} Porter, Collins, Lips, and Solomon all testified to essentially the same time frame of events the night of the 16th and the early morning hours of April 17, 2001. The testimony of these witnesses establishes that Crawford was murdered sometime between 9:30 p.m. on the 16th and 4:30 a.m. on the 17th. Porter's testimony, moreover, puts defendant at Crawford's during those same hours.

1:05 CV 2809                                    13

{¶ 25} Even more incriminating is the evidence of Ballard, who told the jury that defendant admitted to killing Crawford. Ballard is an admitted felon and drug addict. He provided details, however, that defendant relayed to him---details that correspond with other evidence in the case. For example, Ballard's testimony corresponds with that of Porter and Solomon. All three described defendant as driving around with "Larry," "stopping in and out of the house, getting little bits of pieces of stuff to go and buy crack." This evidence belies defendant's statements to police that he did not know Porter.

*5 {¶ 26} Defendant told Ballard about stealing cigarettes to get crack. He also told Ballard how he had made Porter park a few houses down on one of their trips to Crawford's house. Ballard's testimony supports many of the details Porter describes.

{¶ 27} Ballard told the jury defendant's explanation for killing Crawford. Ballard testified that defendant told him he and Crawford had an argument and that she had pushed him. Crawford had pushed him once before and he told her if she ever hit him again he would kill her. This evidence supports the jury finding that defendant was either under the influence of "sudden passion or in a sudden fit of rage, either of which [was] brought on by serious provocation occasioned by the victim." Ballard's testimony also confirms that of Porter and Detective Garisek that defendant had made calls from Crawford's house to Porter's cell phone.

*Cobbins* at ¶¶2-27.

Sufficiency of the evidence :

> does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. (Citation omitted)

*Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2789.

1:05 CV 2809                                    14

Voluntary manslaughter as defined under Ohio Rev. Code §2903.03(A) requires that the person be "under the influence of sudden passion or in a sudden fit of rage."   The state appellate court found  sufficient evidence from the trial to warrant the reduced charge *Cobbins* at ¶14, and further there was overwhelming evidence of Cobbin's killing Lori Crawford.

With respect to the elements of the charge of aggravated robbery as defined under Ohio Rev Code §2911.01(A), the evidence was irrefuted that Cobbin committed a theft offense using a deadly weapon under his control, and there is no question  that he inflicted serious physical harm.  *Cobbins* at ¶15.

With respect to the elements of aggravated burglary as defined under Ohio Rev. Code §2911.11(A)(1), the evidence and reasonable inferences demonstrated that Cobbin by force, stealth or deception trespassed in an occupied structure for the purpose a criminal offense when the offender inflicts physical harm upon another. *Cobbins* at ¶15.

With respect to the charge of kidnapping as defined under Ohio Rev. Code §2905.01(A), there is irrefuted evidence that Cobbin used force to restrain the liberty of the victim for the purpose of facilitating the commission of a felony or flight thereafter.  *Cobbins* at ¶16.  There was sufficient evidence to establish conviction and the state court decision was neither contrary to nor an unreasonable application of *Jackson v. Virginia* or other corresponding Supreme Court cases on this topic.

1:05 CV 2809                                        15

Cobbin had argued that "the lower courts failed to acknowledge . . . that only one witness, the 'jailhouse snitch,' provided direct evidence that Cobbin[ ] committed the crime[s]" (Memorandum in Support p. 8, ECF #11-11).  According to Cobbin this witness had an admitted willingness to commit perjury to shorten his 34 year sentence (*Id.*).  This argument presents a challenge to credibility. Credibility, however, constitutes a challenge to the quality of the evidence not its sufficiency.  See *Tyler v. Mitchell*, 416 F.3d 500,  505 (6th Cir. 2005). [6] Accordingly, the presumption of correctness under §2254(e)(1) governs, which reads that  "a determination of the factual issue made by a State Court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Cobbin has not rebutted the presumption of correctness.  The state appellate court decision was neither contrary to nor an unreasonable application of clearly established federal law nor a result of a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

---

[6] As explained in that decision:

> Tyler's insufficient evidence argument rests on an allegation involving witness credibility, which is clearly the province of the jury and not this court.  See *Herrera v. Collins*, 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (noting that in a habeas corpus action, a federal court should not make its own subjective determination of guilt or innocence); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (noting that attacks on witness credibility constitute a challenge to the quality, but not the sufficiency, of the government's evidence.)

*Tyler*, 416 F.3d at 505.

1:05 CV 2809                                         16

> **GROUND FOUR:** PETITIONER'S SENTENCE WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW.
>
> **Supporting FACTS:** In a recent U.S. Supreme Court decision, the court stated that any factors that enhances a defendant's sentence beyond the statutory maximum, other than a prior conviction must be decided by a jury. Petitioner did not receive the benefit of this ruling and as such was denied equal protection of the law.

Cobbin is referring to the decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which he argued to the Ohio Supreme Court precluded consecutive sentencing.   See Memorandum in Support of Jurisdiction, p. 7, ECF #11-11.   Cobbin maintained that under concurrent sentencing he would receive a sentence of 10 years, but the trial court sentenced him to 21 years without proof beyond a reasonable doubt of the statutory criteria of Ohio Rev. Code §29.29.14(E) governing consecutive sentences.

In *Blakely*, the Supreme Court reaffirmed its position that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).  The Supreme Court rejected Washington State's argument that the trial court did not exceed the maximum sentence for second-degree kidnaping; instead, the Court found that Washington's 10-year maximum sentence was further limited by Washington's Sentencing Reform Act which specified a standard range of up to 53 months, unless the judge found aggravating circumstances.  *Blakely*, 542 U.S. at 303.  While the Washington trial court justified the 90-month sentence because it found Blakely acted with "deliberate cruelty,"  *Id.* at 300, the Supreme Court held that the maximum

1:05 CV 2809                                    17

sentence is the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 303 (emphasis in original).   Blakely did not admit, and no jury found, that he acted with deliberate cruelty; therefore, his sentence violated the Sixth Amendment.  The reasoning in *Blakely* and its federal counterpart, *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), disfavors determinate sentencing schemes which require the sentencing judge to apply finite variables to calculate a permissible sentence in accord with progressively severe preset targets which limit judicial discretion.   There is far less friction with the Sixth Amendment in indeterminate sentencing where the sentencing judge operates solely under personal discretion in formulating a sentence up to legislatively-set maximums, because no additional explicit fact-finding is required.

Following Cobbin's appeal, in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006 - Ohio - 856 (2006), *cert. denied*, -U.S.-, 127 S.Ct. 442, 166 L.Ed.2d 314 (2006), the Ohio Supreme Court evaluated the state's sentencing scheme in light of the holdings of the U.S. Supreme Court in *Apprendi*, *Blakely*, and *Booker*.   The Ohio Supreme Court determined that "Ohio's felony, sentencing plan is a "hybrid" of determinate and indeterminate sentencing, *Foster*, 109 Ohio St.3d at 12, and, the court severed the determinate aspects of the system. *Id.* at 17.   Following the lead of state supreme court decisions in Indiana and New Jersey, (*Foster*, 109 Ohio St.3d at 27 n.98), the Ohio Supreme Court eviscerated § 2929.14(B)'s presumption in favor of a minimum term.   *Id.* at 20.   Similarly, the court severed § 2929.14(E)'s fact-finding requirements prior to imposing consecutive sentences.   *Id*.  Both provisions which governed maximum and consecutive sentencing

1:05 CV 2809                                        18

were struck on the grounds that they permitted judges to impose heightened sentences only after engaging in additional fact-finding found unconstitutional in *Blakely*.  *Id.* at 25.


The Supreme Court announced its decision in *Blakely* on June 24, 2004.  Cobbin was found guilty by the jury of the offense of voluntary manslaughter, aggravated burglary, aggravated robbery and kidnapping on October 4, 2002.  (Journal Entry Ex. 6, ECF #11-3).  His appellate brief was filed on August 21, 2003 (Appellant's Brief, Ex. 10, ECF #11-4) and the state appellate court decision issued July 15, 2004.  The state appellate court resolved Cobbin's argument relying on *State v. Comer*, 99 Ohio St.3d 463 (2003), which was subsequently abrogated by *Foster*.  *Cobbins,* at ¶62; *Foster*, 109 Ohio St.3d at 20-21.


Cobbin argued to the Ohio Supreme Court that it should accept jurisdiction over this case to clarify  the proper standard of proof to be implied post-*Blakely*.  ***The State conceded jurisdiction with respect to this issue.***  See Memorandum in Response, p. 5, ECF #11-12.  It was the position of the State that the decision in *Blakely v. Washington* had no application to Ohio's sentencing procedure relying in part of the Seventh Circuit decision in *U.S. v. Booker*, 375 F.3d 508 (7th Cir. 2004).  Memorandum in Response to Jurisdiction, p. 5-13.  Further in briefing the State relied extensively on the dissenting view expressed in *State v. Taylor*, 2004 - Ohio - 4468.  The arguments raised by the State were essentially a precursor of those raised in *State v. Foster*, where the Ohio Supreme Court consolidated several criminal appeals and found that the State statutes requiring judicial factfinding prior to imposition of maximum, nonmaximum or consecutive sentences violated the Sixth Amendment right to jury trial.

1:05 CV 2809                                19

Despite the State's previous concession before the Ohio Supreme Court that the court retained jurisdiction to resolve Cobbin's *Blakely* argument against consecutive sentencing, respondent now contends that this argument was not "fairly presented" in state court because the *Blakely* argument is fundamentally different from the challenges based on state statutory interpretation presented to the state appellate court. Respondent does acknowledge the presentation of this argument to the Ohio Supreme Court but persists in maintaining that there was waiver, barring federal review due to a lack of "fair presentation."

The fair presentation principle applies not only to those situations where the petitioner has failed to raise his claim to the state's highest court for review, but also where it has been presented, "in such a manner that the state court could not, consistent with its own procedural rules, have entertained it." *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000). The Ohio Supreme Court has generally held that a constitutional challenge to a statute or its application must be presented to the trial court when "the issue is apparent at trial." See *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986) (syllabus). The Ohio Supreme Court has also stated, "[i]t is axiomatic, . . ., that issues not presented for consideration below will not be considered by this court on appeal." See *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 220, 574 N.E.2d 457, 462-63 (1991), overruled on other grounds by *Collins v. Sotka*, 81 Ohio St.3d 506, 691 N.E.2d 581 (1998). The Ohio Supreme Court, however, retains discretion to review a denial of constitutional rights not raised below, but "that discretion will not ordinarily be exercised to review such claims where the right sought to be vindicated was in existence prior to or at the time of trial."

1:05 CV 2809                                              20

*State v. Woodards*, 6 Ohio St.2d 14, 21, 215 N.E.2d 568, 575, 35 O.O.2d 8 (1966) (and see syllabus ¶ 2).  Thus, in *Woodards*, the Ohio Supreme Court noted that the cases asserting  constitutional violation had been decided prior to the time of trial, and there was  no reason for failing to raise the constitutional question by motion to suppress prior to the trial or objection at trial.  *Id.*  Later in *In re M.D.*, the Ohio Supreme Court restated the principle in keeping with *State v. Awan,* but reserved its "right to consider constitutional challenges to the application of statutes and specific cases of plain error or where the rights and interests involved may warrant it."  *Id.*, 38 OhioSt. 3d 149, 527 N.E.2d 286-87 (1988).  The Ohio Supreme Court noted that there had been a constitutional challenge presented in "general terms" at the trial court level which was sufficient to avoid waiver of the issue.  *Id.*, 38 Ohio St.3d at 151, 527 N.E.2d 287-88. The holding, though, did not require a prior general constitutional challenge in all circumstances prior to exercising its discretion to review a constitutional challenge.


            More to the point, the situation in *Foster* was much like that of Cobbin.  *Foster,* likewise, had argued against the imposition of the consecutive sentences but his arguments like Cobbin's were rejected by the state appellate court based on *State v. Comer*.  See *State v. Foster*, 2004 WL 1789514, 2004 - Ohio - 4209 (5th Dist. Ohio Ct. of App. 2004); *State v. Cobbins*, 2004 WL 1576408 at ¶62.  The state appellate decision in *Foster* did not address any *Blakely* or *Apprendi* issues similar to those in Cobbin's situation.  However, the Ohio Supreme Court exercised its discretion to review Foster's new argument that Ohio's sentencing scheme stood in violation of *Blakely*.  Foster was fortunate, his case was consolidated with several other appellants before the Ohio Supreme Court.

1:05 CV 2809                                                    21

Cobbin's appeal, however, was not allowed on December 13, 2004 and was dismissed as not involving any substantial constitutional question.  See *Cobbins*, 104 Ohio St.3d at 1426.


Under the circumstances there was "fair presentation" of the *Blakely* argument to Ohio's Supreme Court consistent with its own procedural rules as set out in *Awan* and *Woodards,* and *In re M.D.*  The Ohio Supreme Court has  permitted review of constitutional claims when the foundation for such claims did not exist at the time of trial.  The constitutional basis for Cobbin's *Blakely* claim did not exist at the time of trial, and in light of the circumstances leading to Ohio Supreme Court review in *Foster*, there was no procedural bar against review of Cobbin's argument by the Ohio Supreme Court.


As it stands, the federal district court is confronted with a situation where the last state decision is an unreasoned denial by Ohio's Supreme Court for lack of  "a substantial constitutional question."  That requires this court to resolve what standard of review must be applied when the state court has avoided addressing the federal constitutional claim raised before it.  There are three options: the deferential standard provided under §2254(d); the *de novo* standard, and the "intermediate approach."  See *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (*de novo*); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001) (discussing alternate standards); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004) (same); *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006) (same).  The gist of circuit precedent is that when there is a decision, deference is accorded under §2254(d) to the state court decision under the "intermediate approach." *Moldonado v. Wilson*,

1:05 CV 2809                                      22

416 F.3d 470, 476, *cert. denied*, 546 U.S. 1101 (2006) (6ᵗʰ Cir. 2005); *Howard*, 405 F.3d at 467.

When there is no decision or "no results," federal review is *de novo*.  See *Wiggins v. Smith*, 539 U.S.

at 534, 123 S.Ct. at 2542 (*de novo* when there was no state court decision on second prong of

*Strickland* test).   When the state court has failed to articulate a decision or provide a rationale, the

district court must distinguish between a situation of "no results" from that of "no reasoning".

*Howard v. Bouchard*, 405 F.3d at 467; *McKenzie*, 326 F.3d at 727.  As illustrated in *McKenzie*, the

"no reasoning" situation occurs when the state court has issued a summary order, which fails to

explain its reasoning, as opposed to the situation where no state court has "directly addressed the

specific issue."   The Ohio Supreme Court statement of "no substantial constitutional question"

equates with an unreasoned disposition requiring "intermediate review." [7]


Applying the deferential approach, it is clear that Cobbin cannot establish that the denial of

his *Blakely* claim violated the strictures of 28 U.S.C. §2254(d).  First, his situation was not similar

to that addressed in *Blakely,* so that Cobbin cannot show that a denial was "contrary to" this clearly

---

[7] Where, however, the state court disposes of a constitutional claim but fails to articulate its analysis, the rule is less clear. The Petitioner argues that because the state courts did not articulate their reasoning for denying the due process claim, the federal court should review the constitutional claims *de novo*. The Respondent argues that the state court's result remains entitled to deferential review.

We have taken *an intermediate approach-in between de novo review and complete deference*. We have held that a federal habeas court must conduct an independent review of the record and applicable law to determine whether, under the AEDPA standard, the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir.2000) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir.1999)).

The independent review, however, is not a full, de novo review of the claims. Id. As we held in Harris, the review remains deferential, because the court cannot grant relief unless the state court's result contradicts the strictures of AEDPA. Id.  (emphasis supplied).

*Howard v. Bouchard*, 405 F.3d at 467-468.

1:05 CV 2809                                        23

established legal precedent. Second, there was no unreasonable application of *Blakely*. In *State v. Foster*, Ohio's Supreme Court was focused on the "unique" presumption in favor of concurrent sentences. *Id.*, 109 Ohio St.3d at 21-22. In *State v. Tanner*, an Oregon court disagreed and found that judicial factfinding to impose consecutive sentences were not so unique and not prohibited by the Supreme Court. *Id.*, 210 Or.App. 70, 81-85, 150 P.3d 31 (2006), pet. for review held in abeyance (June 19, 2007). Very recently, the Supreme Court of Maine in *State v. Keene*, also disagreed with *State v. Foster* and held consecutive sentencing was not a violation of the Sixth Amendment despite a presumption in favor of concurrent sentencing. *Id.*, 927 A.2d 398 (Me. 2007), pet. for cert. filed (July 23, 2007) (expressing the view that two sentences do not become a single sentence by virtue of their running consecutively); **[8]** But see *In re Personal Restraint of VanDelft*, 158 Wash.2d 731, 147 P.3d 573 (2006), *cert. denied*, 127 S.Ct. 1876 (2007) (imposition of "exceptional sentence" requiring consecutive sentences violated *Blakely*), distinguishing *State v. Cubias*, 155 Wash.2d 549, 120 F.3d 929 (2005).

---

[8] One state in disagreement is Ohio, which distinguished its own consecutive sentencing law as unique because the law mandated that the court make certain findings of fact before it could depart from imposing concurrent sentences. State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470, 491 (2006), cert. denied, - U.S. -, 127 S.Ct. 442, 166 L.Ed.2d 314 (2006). We are not persuaded by the Ohio court's analysis. See *State v. Tanner*, 210 Or.App. 70, 150 P.3d 31, 37 n. 6 (2006) (noting that several jurisdictions have held that Apprendi does not apply to sentencing statutes that require factual findings before a court may impose consecutive sentences). The threshold question is whether the court has impermissibly "increase[d] the penalty for a crime beyond the prescribed statutory maximum" by using factual determinations not found by the jury beyond a reasonable doubt, other than from a prior conviction, a guilty plea, jury verdict, or admission by the defendant. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348; see *Booker*, 543 U.S. at 244, 125 S.Ct. 738. The court's decision to require that separate sentences be served consecutively in no way increases the penalties for the individual crimes. (footnote omitted).
*State v. Keene*, 927 A.2d at 407.

1:05 CV 2809                                        24

The Supreme Court has side-stepped an opportunity to confront the issue of whether *Blakely*

impacts consecutive sentencing on *certiorari* of *People v. Black*, 35 Cal. 4th 1238, 113 P.3d 534, 29

Cal Rptr. 740 (2005). The California Supreme Court had stated:

> Permitting a judge to make any factual findings related to the choice between
> concurrent or consecutive sentences does not create an opportunity for
> legislatures to eliminate the right to a jury trial on elements of the offenses.
> Nothing in the high court's decisions in *Apprendi, Blakely,* or *Booker*
> suggests that they apply to factual determinations that do not serve as the
> "functional equivalent" of an element of a crime.

*Id.*, 35 Cal. 4th at 1263, 113 P.3d at 549.

However in *Black v. California*, - U.S. -, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007), the

Supreme Court remanded for reconsideration in light of *Cunningham v. California*, - U.S. -, 127

S.Ct. 856, 166 L.Ed.2d 856 (2007). *Cunningham*, though, addressed a determinate sentencing law

which limited judicial discretion to selecting one of several statutory prescribed periods of

imprisonment. The decision did not squarely address the debate over concurrent versus consecutive

sentences in light of *Blakely*. On remand, the California Supreme Court appeared to adopt the

position of *State v. Foster,* that *Blakely* did apply to consecutive sentencing. See *People v. Black*,

41 Cal. 4th 799, 822, 161 P.3d 1130, 1145, 62 Cal. Rptr. 569, 587 (2007) (finding California's §669

did not establish a presumption in favor of concurrent sentences to require judicial factfinding).

The position expressed in *State v. Foster* appears at the moment to be favored. However,

the Supreme Court has not decided the issue and "[a] legal doctrine not 'clearly established Federal

law, as determined by the Supreme Court' unless it is based on 'holdings, as opposed to the *dicta*

of the Court's decision as of the time of the relevant state-court decision." *Stewart v. Wolfenbarger*,

1:05 CV 2809                                          25

468 F.3d 338, 346 (6ᵗʰ Cir. 2006) quoting *Jones v. Jamrog*, 414 F.3d 585, 591 (6ᵗʰ Cir. 2005),

quoting *Williams*, 529 U.S. at 412.  *Blakely* did not involve a question of consecutive sentencing,

but the matter of enhancement of a sentence, and the Supreme Court has not extended *Blakely*'s

reasoning into the realm of consecutive sentencing.  This was the central theme in *State v. Tanner*,

where the Oregon appellate court noted that the Supreme Court in *Apprendi* did not suggest the

principle applied to aggregated sentences, and disagreeing with *State v. Foster*.  *Id.*, 210 Or.App.

70, 78-88, 150 P.3d 31, 35-41 (2006).


        This court need not resolve Cobbin's argument and assess whether *State v. Foster* is correct.

*Tanner, Keene* and case cited therein demonstrate there are divergent views on Cobbin's argument

so it can safely be said that the December 2004 rejection by the Ohio Supreme Court of an argument,

which subsequently accepted and made law in *State v. Foster,* was not an "objectively unreasonable"

application of *Blakely*.  Accordingly, this unreasoned denial of Cobbin's argument did not contradict

strictures of §2254(d).  Additionally, because Cobbin has not shown a violation under §2254(d) due

to the Ohio Supreme Court's denial of his *Blakely*  argument against consecutive sentences, it is

1:05 CV 2809                                    26

unnecessary to address respondent's alternate argument that there was no structural error in

sentencing so that the district could analyze this issue as a matter of harmless error. [9]

## *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Cobbin has not demonstrated that he

is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary

to or involved an unreasonable application of Federal law as determined by the Supreme Court of

the United States or was the result of a decision based on an unreasonable interpretation of the facts

in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  Cobbin

has not demonstrated any error resulting in denial of fundamental fairness or cause to hesitate due

---

[9] The undersigned notes that generally this issue is disposed of by the rationale that *Blakely*'s principles are procedural rules which do not have retroactive effect in collateral review of convictions which became final prior to their announcement.  *Humphress v. U.S.*, 398 F.3d 855 (6th Cir. 2005), *cert. denied*, - U.S. -, 126 S.Ct. 199, 163 L.Ed.2d 190 (2005); *Valentine v. U.S.*, 488 F.3d. 325, 2007 WL 1387906 (6th Cir. 2007).  Likewise *State v. Foster*, require that all criminal cases pending on direct review involving the offending sentencing statutes required remand.  *Foster*, 109 St.3d at 31, 845 N.E.2d at 499.   Cobbin's appeal was pursuant to Ohio R. App. P. 5(A), a delayed appeal.

Whether or not a delayed appeal is part of the direct review process is a question in dispute in Ohio's courts. Very recently the Ohio Supreme Court has certified a conflict to address the following two questions.

1. Whether a delayed appeal under Ohio Rule of Appellate Procedure 5(A) is identical to a direct appeal under Ohio Rule of Appellate Procedure 4(A) for purposes of appellate review as to whether a defendant was sentenced upon the basis of an unconstitutional statute under the guidelines of *State v. Foster*.

2. Whether a defendant's sentence must be reversed on the basis of *State v. Foster* when: a) the defendant was sentenced prior to the announcement of *State v. Foster*, b) the defendant was sentenced under the statutes found to be unconstitutional in *State v. Foster*; c) the defendant does not pursue a direct appeal but rather files a delayed appeal; d) and raises the issues of unconstitutional sentencing on the basis of Foster for the first time on delayed appeal.

*State v. Silsby*, 115 Ohio St. 3d 1406, 873 N.E.2d 1312, 2007 - Ohio - 4888 (Table 2007)).

The Sixth Circuit in *Searcy v. Carter* never specifically defined what is meant by direct appeal but merely held that a delayed appeal under Ohio's procedure did not retrigger the statute of limitations under 28 U.S.C. §2244(d) when it had previously run.  *Searcy*, 246 F.3d 515, 519 (6th Cir. 2001), *cert. denied*, 534 U.S. 905 (2001). Therefore, it is possible that *Blakely* could apply to Cobbin's appeal, as a direct appeal.

1:05 CV 2809                                    27

to the probability of actual innocence.  There has been no demonstrated need for an evidentiary hearing.  It is recommended that Cobbin's application for habeas corpus be denied.

                                          _____s/James S. Gallas_____
                                                United States Magistrate Judge

    *ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

October 30, 2007